# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY SMITH, INDIVIDUALLY AND ON BEHALF OF A MINOR, S.S., <br><br> Plaintiff, <br><br> v. <br><br> MID-VALLEY SCHOOL DISTRICT, and SALISBURY BEHAVIORAL HEALTH, INC., d/b/a NEW STORY THROOP <br><br> Defendants. | CIVIL ACTION NO. 3:18-CV-00478 <br><br> (JUDGE CAPUTO) |

## MEMORANDUM

Presently before this Court is a Motion to Dismiss filed by Defendant Mid-Valley School District ("the District"). The IDEA requires exhaustion of administrative procedures before the filing of a civil action in federal court, and Plaintiff Tammy Smith ("Plaintiff") admits she failed to exhaust these procedures before commencing this action. Because exhaustion of these procedures is not futile, this Court does not have subject matter jurisdiction over the claims raised by Plaintiff against the District. For this reason, I will dismiss Counts I, III, V, and VIII of the Amended Complaint without prejudice.[1]

## I. Background

### A. The Parties

Plaintiff Tammy Smith is the mother to S.S., a minor. (*Doc.* 10, at ¶ 2.) S.S. is an autistic student who was enrolled at the District with an Individualized Education Plan ("IEP") for behavioral support. In evaluating S.S., the District believed that he would be best served by enrolling in the New Story Throop Program, operated by Defendant Salisbury Behavioral Health, Inc. ("New Story Throop"). (*Doc.* 10, at ¶¶ 10-11.) New

---

[1] These Counts are not being dismissed because they fail to state a claim, and I express no opinion on that issue. Dismissal here is granted soley because Plaintiff has failed to exhaust her administrative remedies.

Story Throop is a private entity licensed to offer education to students upon referral from participating school districts. (*Doc.* 10, at ¶ 4.) S.S. was placed in this program.

**B.     "Quiet Room" Incidents**

On or about February 16, 2016, the Throop Police Department received a report of suspected child endangerment and neglect at the New Story Throop facility. Three days later, an officer was dispatched to the New Story Throop facility to investigate the report. During his investigation the officer discovered that S.S. had been placed in a "quiet room" on February 8, 2016 and again on February 9, 2016 for alleged behavioral problems. While in the quiet room, school employees observed S.S. taking off all his clothes and urinating on the floor. They continued to stand idle as he began to play in the urine on his hands and knees and, ultimately, drink the urine from the ground. (*Doc.* 10, at ¶¶ 12-18.) Both of the quiet room incidents happened on school property and during school hours. (*Doc.* 10, at ¶ 42.)

On both days, the District's Special Education Director was informed of S.S.'s conduct and the associated lack of action by staff. (*Doc.* 10, at ¶ 19.) With this knowledge, the Director, along with other school district officials, conducted an investigation into the incidents. Shockingly, this investigation concluded with no findings of fault and triggered no change in S.S.'s IEP. (*Doc.* 10, at ¶ 36.)

**C.     Removal from the New Story Throop Program & the Mid-Valley School District**

Tammy Smith was informed of the quiet room incidents by the District at some time following the District's investigation. (*Doc.* 10, at ¶ 20.) S.S. was unable to inform his mother of the quiet room incidents because he is non-verbal. (*Doc.* 10, at ¶ 9.) After learning of the incident, Tammy Smith immediately requested IEP meetings as she believed—and still believes—that the District's IEP was insufficient and denied her son the free appropriate public education ("FAPE") he was entitled to under the law. As a result of Tammy Smith's involvement, S.S. was removed from the New Story Throop Program. (*Doc.* 10, at ¶¶ 22-23.)

S.S regressed in his mental progression and development due to the quiet room incident. In an effort to enhance his development, his mother elected to remove him from the District, and he was placed in a full-time institution providing education services tailored to support students living with autism. (*Doc.* 10, at ¶¶ 26-27.) Plaintiff also alleges that S.S. suffered severe emotional distress, exhibited aggressive behavior, and continued to require counseling as a result of his placement in the New Story Throop Program. (*Doc.* 10, at ¶ 45.)

**D.    Procedural History**

To date, Plaintiff has not exhausted the administrative procedures set forth in the Individuals with Disability Education Act ("IDEA"). Namely, she has not requested a due process hearing. (Doc. 10, at ¶ 31.) Plaintiff claims that such a hearing would have been futile because those procedures could not remedy the "educational violations that have occurred in the past and that are no longer on-going." (*Doc.* 20, at 8.)

Yet, as a result of S.S.'s treatment in the New Story Troop Program, Tammy Smith, individually and on behalf of her son, filed an Amended Complaint (*Doc.* 10.) on March 23, 2018 alleging: (1) a Violation of Title IX of the Education Amendments of 1972[2]; (2) Retaliation Under Title IX of the Education Amendments of 1972[3]; (3) a Violation of the 14th Amendment[4]; (4) a Violation of the Individuals with Disability Education Act, 20 U.S.C. § 1400 *et seq*.[5]; (5) a Breach of a Fiduciary Duty[6]; and (6) a Violation of § 504 of the Federal Rehabilitation Act[7]. The District has filed a Motion to Dismiss Plaintiff's Amended Complaint. (*Doc.* 11.) This Motion if ripe for review.

---

[2]    Count I, brought by Tammy Smith against Mid-Valley School District.
[3]    Count II, brought by Tammy Smith against New Story Throop.
[4]    Count III, brought by Tammy Smith against Mid-Valley School District. Count IV, brought by Tammy Smith against New Story Throop.
[5]    Count V, brought by Tammy Smith against Mid-Valley School District. Count VI, brought by Tammy Smith, against New Story Throop.
[6]    Count VII, brought by Tammy Smith against New Story Throop.
[7]    Count VIII, brought by Tammy Smith against Mid-Valley School District. Count IX, brought by Tammy Smith against New Story Throop.

3

## II. Legal Standards

**A.   Motion to Dismiss: Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting

*Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint. In addition to the allegations found in the complaint, the court may examine "exhibits attached to the complaint, matters of public record," and "legal arguments presented in memorandums or briefs and arguments of counsel." *Mayer*, 605 F.3d at 230; *Pryor*, 288 F.3d at 560. Additionally, the Court may consider a "document integral or explicitly relied upon in the complaint." *In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

**B.     Motion to Dismiss: Rule 12(b)(1)**

The District also seeks dismissal of the Amended Complaint based on Plaintiff's failure to exhaust administrative remedies. Under the IDEA, exhaustion is a jurisdictional matter. *See W.B. v. Matula*, 67 F.3d 484, 493 (3d Cir. 1995), *abrogated on other grounds by A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007); *see also Falzett v. Pocono Mt. Sch. Dist.*, 150 F. Supp. 2d 699, 701 (M.D. Pa. 2001) (Caputo, J.). Thus, in essence, the District argues that this Court lacks subject matter jurisdiction to hear this case.

Unlike dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks the authority to hear the case. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A Rule 12(b)(1) motion may be treated either as a facial or a factual challenge to the court's subject matter jurisdiction. *See Gould Elecs. Inc., v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). If the motion is treated as a facial attack, the court may consider only the allegations contained in the complaint and the exhibits attached to the

complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *See generally Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

On the other hand, if the defendant submits and the court considers evidence that controverts the plaintiff's allegations, the court must treat the motion as a factual challenge under Rule 12(b)(1). *Gould*, 220 F.3d at 178. In such cases, "the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations in the plaintiff's complaint, and the burden of proof is on the plaintiff to show that the court possesses jurisdiction. *Id.* However, the plaintiff must be permitted to respond to the defendant's evidence with evidence supporting jurisdiction. *Id.*

I will treat the instant Motion as a facial challenge to the Court's subject matter jurisdiction.

### III. Discussion

**A.    IDEA's Statutory Framework**

The IDEA requires that states receiving federal education funding provide all disabled children with a FAPE. *See* 20 U.S.C. § 1412(a)(1). The statute seeks "to ensure that all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "Although a state is not required to maximize the potential of every handicapped child, it must supply an education that provides 'significant learning' and 'meaningful benefit' to the child." *Ridley*, 680 F.3d at 269 (quoting *D.S.*, 602 F.3d at 556). The provision of a "trivial educational benefit" does not suffice. *Id*. Thus, "[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make

6

progress appropriate in light of the child's circumstances." *Endrew F v. Douglas Cnty Sch. Dist.*, 137 S. Ct. 988, 999 (2017).

To ensure the guarantees provided under the IDEA are realized by handicapped students, the Act provides for a comprehensive scheme of procedural safeguards. *See* 20 U.S.C. § 1400 *et seq*.; *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775 (3d Cir. 1994) Chief among these safeguards is the right to a due process hearing before an independent administrative officer. *See Falzett*, 150 F. Supp 2d at 702. This safeguard provides parents with an avenue to file a complaint and participate in an impartial due process hearing with respect to "any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a [FAPE] to such child . . . ." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (citing 20 U.S.C. § 1415(b)(6)(A), (f)(1)(A)).

Generally, before a parent pursues an action in federal court she must complete the administrative process detailed under the IDEA. This means that a parent must exhaust all potential avenues of relief afforded by the IDEA–including a due process hearing–before commencing a federal civil action. *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 992 (7t.h Cir. 1996); *see Batchelor*, 759 F.3d at 276. Indeed, parents may not simply ignore "the remedies available under the IDEA, and insist on those of their own devising; under the IDEA, educational professionals are supposed to have at least the first crack at formulating a plan to overcome the consequences of educational shortfalls." *Charlie F.*, 98 F.3d at 992. Stated differently, "to allow parents to come directly to federal courts [would] render the entire scheme of [the IDEA] nugatory." *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). Thus, when raising a claim under the IDEA, a parent must exhaust the Act's administrative process before filing a civil action in federal court.

The IDEA's exhaustion requirement is similarly applicable to actions arising under other federal laws whenever the Plaintiff seeks relief "also available" under the Act. In fact, Congress provided an express rule of construction in 20 U.S.C. § 1415(I), which states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

"This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under the IDEA and repackaging them as claims under some other statute." *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996). For example, if a plaintiff were to file a complaint containing an unexhausted IDEA claim and an ADA claim premised on the same underlying conduct, both claims would be dismissed because the Court would lack subject matter jurisdiction pending the exhaustion of plaintiff's IDEA claim. *See, e.g.*, *Roquet v. Kelly*, No. 11-1763, 2013 WL 5570269, at *9-10 (M.D. Pa. 2013).

The exhaustion requirement may also apply where a plaintiff does not explicitly assert a claim under the IDEA, but "the theory behind the grievance may activate the IDEA process." *Charlie F.*, 98 F.3d at 992; *see also Batchelor*, 759 F.3d at 276; *Polera v. Bd. of Educ.*, 288 F.3d 478, 488 (2d Cir. 2002). In other words, any action that alleges a violation of the IDEA or a denial of FAPE must exhaust the IDEA's administrative process before filing a civil action in federal court even if the IDEA is not a cause of action alleged in the complaint. Thus, "determining if the IDEA's administrative process must be exhausted before bringing claims in federal court turns on whether the parties *could have* asserted the claims under the IDEA." *Batchelor*, 759 F.3d at 273 (emphasis added).

Here, Plaintiff was required to exhaust the IDEA's administrative process. She did not. Yet, she has filed a civil action in federal court. Plaintiff's Amended Complaint

8

asserts–at least in part–that the District violated the IDEA and denied her son FAPE. Without more, this requires dismissal under Federal Rule of Civil Procedure 12(b)(1). However, Plaintiff contends that exhaustion was not required in this case because availing herself of the administrative process would have been futile. If true, Plaintiff's failure to exhaust could be excused and this Court would have subject matter jurisdiction to entertain Plaintiff's action.

**B.      Futility Exception to the IDEA's Exhaustion Requirement**

Plaintiff argues that her failure to exhaust the administrative process should be excused because the IDEA proceedings would have been futile. Specifically, Plaintiff contends that IDEA's administrative process would be futile because the relief she seeks– compensatory damages–is not available under the IDEA. The District disagrees. It contends that the request for monetary damages does not relieve Plaintiff of her need to exhaust since the IDEA could provide some, if not all, forms of appropriate relief. I agree with the District: Plaintiff's failure to exhaust is not excused.

First, it is important to note that Plaintiff is correct in so far that she suggests that a failure to exhaust the administrative procedures provided by the IDEA may be excused if the IDEA proceedings would be futile or insufficient. *See D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275 (3d Cir. 2014). To determine whether exhaustion of the administrative process would be futile, I must determine whether the administrative process can either (1) provide *any* relevant remedy or (2) serve to clarify the factual record. *See Batchelor,* 759 F.3d at 280-81. If the administrative process could accomplish either goal, its use would not be futile. *Id.*

The IDEA offers a broad range of relief that aims to cure educational harms and provide reimbursement for certain financial loses that occurred as a result of educational harm. *See D.F. v. Collingwood Borough Bd. of Educ.*, 694 F.3d 488, 498-99 (3d Cir. 2012);

9

*A.W.*, 486 F.3d at 802. While compensatory damages are not available under the IDEA, other forms of appropriate relief may be provided. For example, the IDEA has been interpreted to provide attorneys' fees, reimbursement for private educational placement, and compensatory education. *See Batchelor*, 759 F.3d at 277 n 12.

The IDEA provides at least some relevant remedies related to Plaintiff's alleged harm. Here, it is clear that–at least in part–Plaintiff complains of educational violations. Congress specifically enacted a law, the IDEA, which provides tailored remedies to cure educational harm. To claim that it would be futile to enter a process where such specific relief is available borders on disingenuous. Further, Plaintiff's claim that the relief provided under the IDEA would be insufficient to "properly compensate[8] the Plaintiff for the educational violations that have occurred in the past and that are no longer ongoing" has no impact on this analysis. Once the administrative process has been completed, and if Plaintiff is unsatisfied with the relief obtained, Plaintiff "may seek further remedy in court pursuant to statutory schemes allowing for compensatory and punitive damages, such as Section 504 [of the Rehabilitation Act.]" *Id.* at 278.

Accordingly, I find that it would not be futile for Plaintiff to engage in the IDEA's administrative process because it could provide a remedy for at least some of the harm alleged. For this reason, exhaustion is not excused and, at this time, this Court lacks subject matter jurisdiction to review Plaintiffs claims.[9]

---

[8] While I recognize that Plaintiff has only requested compensatory damages, that narrow request does not foreclose the availability of other appropriate forms of relief. *See* FED. R. CIV. P. 54(c) ("Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.") Further, the Third Circuit has explicitly explained that the remedies sought by a plaintiff "do not dictate the applicability of the IDEA" and its exhaustion requirement to his claims. *Batchelor*, 759 F.3d at 277.

[9] All claims stemming from the facts underlying the unexhausted IDEA claim must be dismissed for lack of subject matter jurisdiction. *See*

10

### IV. Conclusion

For the above stated reasons, Counts I, III, V, and VIII of the Amended Complaint will be dismissed for lack of subject matter jurisdiction.

An appropriate order follows.

| June 22, 2018 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

---

*Falzett*, 150 F. Supp. 2d. at 705-706. This means that Counts I, III, V, and VIII will be dismissed. I will not dismiss the entire complaint at this time because there is another pending Motion to Dismiss filed with respect to Counts II, IV, VI, VII, and IX.