# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY SMITH, individually and on behalf of a minor, S.S.,

    Plaintiff,

       v.

MID-VALLEY SCHOOL DISTRICT and SALISBURY BEHAVIORAL HEALTH, INC., d/b/a NEW STORY THROOP,

    Defendants.

No. 3:18-CV-00478

No. 3:19-CV-00064

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a Motion to Dismiss (*Smith v. Mid-Valley Sch. Dist.*, 3:19-cv-00064 ("*Smith II*"), ECF No. 6) filed by Defendant Mid-Valley School District ("Defendant" or "the District"). For the reasons that follow, Defendant's Motion to Dismiss will be granted in part and denied in part.

### I. Background

The facts as alleged in the Complaint (*Smith II*, ECF No. 1) are as follows:

Plaintiff Tammy Smith ("Plaintiff" or "Smith") is the mother of S.S., a minor. (*Id.* ¶ 2). S.S. is a non-verbal autistic student who was enrolled in the District's Special Education Program with an Individualized Education Plan ("IEP") for behavioral support. (*Id.* ¶¶ 6, 7-9). The District referred S.S. to the New Story Throop program for attempted IEP support classes. (*Id.* ¶¶ 6, 10).

On February 16, 2016, the Throop Police Department received a report of "suspected child endangerment and neglect" at New Story Throop. (*Id.* ¶ 11). Three days later, after interviewing staff members, the police officer assigned to the matter determined this report involved S.S.'s placement in a "quiet room" for behavioral problems on February 9, 2016. (*Id.* ¶¶ 12, 13). According to New Story Throop employees who observed the incident, S.S. took off all his clothes, urinated on the

floor, "stoop[ed] to the ground on his hands and knees[,]" and "drank his own urine from the ground." (*Id.* ¶¶ 14, 15). These employees witnessed but did not attempt to stop S.S.'s behavior. (*Id.* ¶ 15). The Throop Police Department also found that a similar incident occurred on February 8, 2016, in which New Story Throop employees watched as S.S. took off his clothes, played in, and drank his own urine. (*Id.* ¶¶ 16, 17).

Although the District's Special Education Director was informed about both incidents each day they occurred, Smith was not informed of these incidents "until some significant time after [they] occurred." (*Id.* ¶¶ 18, 19). Smith immediately requested IEP meetings upon learning of these incidents and S.S. was subsequently removed from New Story Throop at Smith's direction. (*Id.* ¶ 21). Following these events, S.S. "regressed in his mental progression and development" and was placed in a full-time institution that provides him with educational and living support. (*Id.* ¶¶ 25, 26).

Plaintiff filed a complaint in February of 2018 against the District and New Story Throop in connection with these events, which was removed to this Court on February 27, 2018. (*Smith v. Mid-Valley Sch. Dist. et al.*, No. 3:18-cv-00478 ("*Smith I*"), ECF No. 1)). On March 23, 2018, Plaintiff filed an amended complaint. (*Id.*, ECF. No. 10). Both defendants submitted motions to dismiss the amended complaint. (*Id.*, ECF Nos. 11; 12). I granted the District's motion to dismiss as to Counts I, III, V, and VIII on June 22, 2018. (*Id.*, ECF Nos. 23, 24).

On January 10, 2019, while New Story Throop's motion to dismiss was still pending, Plaintiff filed the instant Complaint (*Smith II*, ECF No. 1) against the District alleging the following: (1) a violation of Title IX of the Education Amendments of 1972; (2) violations of the Fourteenth Amendment equal protection and due process clauses; (3) a violation of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; and (4) a violation of Section 504 of the Federal Rehabilitation Act. (*See generally id.*). The District filed the instant Motion to Dismiss the *Smith II*

Complaint on March 4, 2019 and then filed a Motion to Consolidate both cases on March 18, 2019. (*Smith II*, ECF Nos. 6, 11). I granted the Motion to Consolidate on April 2, 2019. (*Smith I*, ECF No. 25). I also granted New Story Throop's *Smith I* Motion to Dismiss as to Counts IV and VI of the Amended Complaint on the same day. (*Smith I*, ECF No. 26). The District's Motion to Dismiss the instant complaint (*Smith II*, ECF No. 1 ("Doc. 1")) has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

3

### III. Discussion

Defendant argues Plaintiff's claims under Title IX, 42 U.S.C. § 1983, and § 504 of the Rehabilitation Act should be dismissed for failure to state claims on which relief may be granted. Defendant, however, has not specifically argued Plaintiff's IDEA claim in Count III should be dismissed. Instead, Defendant argues, and Plaintiff agrees, that Plaintiff is not entitled to compensatory and punitive damages under the IDEA. As such, Count III of the Complaint may proceed. I will address Defendant's arguments in favor of dismissing the remaining claims below.

### A.    Title IX Claim

In Count I of the Complaint, Plaintiff asserts a hostile educational environment claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, which provides a remedy for sexual harassment of a student in a school setting. Title IX provides in relevant part that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX encompasses sexual harassment of a student by a teacher or another student and is enforceable through an implied private right of action for damages against a school district. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 529, 643-45, 119 S. Ct. 1661 (1999); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75-76, 112 S. Ct. 1028 (1992).

Defendant correctly notes Plaintiff failed to plead any facts that show S.S.'s gender had anything to do with how he was treated by either the District or New Story Throop. While Plaintiff argues in her brief that S.S. was "a male student of taller build" who was "specifically discriminated against from normal special education protection because of his sex and size that would have been afforded to other smaller female counterparts in his classroom[,]" Plaintiff alleged no such facts in her

Complaint. (*Smith II*, ECF No. 10 at 6). Indeed, no reference to S.S.'s build was made in the Complaint and the only mention of S.S.'s gender comes in the form of a legal conclusion rather than factual allegation. (*See* Doc. 1 ¶ 35 ("The inadequacy of the District's actions during investigative and remedial stages amounts to deliberate indifference to the rights of S.S. to enjoy educational opportunities on an equal basis with other students *because of sexual discrimination*.") (emphasis added)). Accordingly, I find Plaintiff has not stated a claim for sex-based discrimination under Title IX.

### B.    Constitutional Claims

In Count II of the Complaint, Plaintiff alleges the District's conduct, or lack thereof, in response to the incidents on February 8 and 9, 2016 violated S.S.'s rights under the Fourteenth Amendment due process and equal protection clauses. (Doc. 1 ¶¶ 44-48). Though not stated as such in the Complaint, these claims are brought under 42 U.S.C. § 1983, which provides a civil remedy against persons acting under color of state law who deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Defendant raises several challenges to Plaintiff's constitutional claims in Count II. However, because I agree that Plaintiff has failed to properly allege a Section 1983 municipal liability claim against the District, I need not address Defendant's additional arguments in favor of dismissing the claims in Count II.

"[M]unicipalities and other local government units are to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct.

2018 (1978).  In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice.  *Id.*  Thus, a Section 1983 claim against a municipality requires plaintiffs to: (1) identify a policy, custom, or practice that deprived them of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy, custom, or practice and their injury.  *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997); *see also Bell v. City of Philadelphia*, 629 F. App'x 214, 216 (3d Cir. 2015).

While Plaintiff does not allege a specific District policy in her Complaint, she nevertheless alleges that after being informed of the incidents on February 8 and 9, 2016 "[t]he Mid-Valley School District Director of Special Education did not engage in activities or actions to prevent the acts from occurring at New Story Throop[.]" (Doc. 1 ¶¶ 18, 19, 24, 27). In *Stoneking v. Bradford Area School District*, the Third Circuit found a "practice of 'reckless indifference to instances of known or suspected sexual abuse of students by teachers'" constituted a policy, practice, or custom for purposes of establishing a *Monell* claim.  *Black v. Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712 (3d Cir. 1993) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989)).  In so concluding, the Court held school officials "could be found liable if they acted with deliberate indifference as to whether students were sexually abused and if the manner in which they handled complaints affirmatively contributed to plaintiff's being assaulted."  *Id.*

Plaintiff's allegations against the District do not satisfy the *Stoneking* standard. Apart from the obvious factual differences between the cases, namely that *Stoneking*

involved repeated instances of sexual abuse of a student by a teacher, the District's conduct as alleged in the Complaint is far less egregious than the conduct by the school officials in *Stoneking*. "[A] plaintiff must do more than show the defendant could have averted her injury and failed to do so." *Id.* Here, Plaintiff alleges at least one District official knew of the incidents on February 8 and February 9, 2016 and failed to take any action to prevent them from happening in the future, such as starting an investigation. (*See* Doc. 1, generally). By contrast, the school officials in *Stoneking* were alleged to have engaged in "concealing complaints of [] abuse, discouraging such complaints, failing to investigate such complaints, and requiring complainants to apologize to the accused teachers[.]" Compared with the school officials' actions in *Stoneking*, the failure to act by District officials amounts to more of a "'negligent failure to recognize [a] high risk of harm'" than reckless indifference. *Black by Black*, 985 F.2d at 712 (quoting *Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991). Plaintiff has therefore failed to allege facts showing the District acted with deliberate indifference toward what happened to S.S. in February of 2016.[1] Accordingly, Plaintiff has failed to state a *Monell* claim against the District.

---

[1] Even if Plaintiff had alleged sufficient facts to show deliberate indifference by the District officials, Plaintiff nevertheless failed to show how the failure to act "contributed to plaintiff's [treatment]" on February 9, 2016. *Id.* The only two incidents of improper supervision of S.S. alleged in the Complaint occurred over two consecutive days. As such, there is nothing the District could have done to prevent the incident on February 8, 2016. Moreover, given that the New Story Throop employees watched as S.S. stripped, played in, and drank his own urine and failed to intervene, and the limited window of time the District had to prevent the February 9 incident, the District's failure to act may not have actually caused the February 9 incident. Yet, it would be equally challenging to conclude from the facts as alleged that the February 9 incident would have happened even if the had District intervened. As Plaintiff has not sufficiently alleged deliberate indifference, however, I need not conclude at this time whether the District's failure to act in response to the February 8 incident "contributed to" the February 9 incident.

## C.    Section 504 Claim

Section 504 of the Rehabilitation Act bars all federally funded entities from discriminating on the basis of disability.  20 U.S.C. § 794(a).  To establish a claim pursuant to Section 504, a plaintiff must demonstrate that (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school because of his disability.  *S.H. v. Lower Marion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Ridgewood Bd. of Educ. v. N.E. ex rel M.E.*, 172 F.3d 238, 253 (3d Cir. 1999 (citation omitted), *superceded by statute on other grounds*.  Where, like here, a plaintiff seeks compensatory damages on a Section 504 claim, the plaintiff must also prove that the discrimination or denial of benefits at issue was intentional, or at least that the defendant acted with deliberate indifference to the underlying discrimination.  *Shadie v. Hazelton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014).

Defendant argues Plaintiff has neither satisfied the elements of a Section 504 claim nor shown the District's actions were intentional for purposes of recovering compensatory damages.  As to the first element of a Section 504 claim, the definition of "disability" under the Rehabilitation Act comes from the Americans with Disabilities Act ("ADA").  29 U.S.C. § 705(20)(B); *see also Karrissa G. v. Pocono Mountain Sch. Dist.*, No. 3:16-CV-01130, 2017 WL 6311851, at *5 (M.D. Pa. Dec. 11, 2017).  Under the ADA, an "individual with a disability" is defined as a person with a "physical or mental impairment which substantially limits one or more of such person's major life activities."[2]  42 U.S.C. § 12102(1).

---

[2]    A "major life activity" includes learning, reading, concentrating, thinking, communicating, and working.  42 U.S.C. § 12102(2).

As compared to the IDEA, Section 504 provides a broader definition to the term "disability.["] But, both the IDEA and Section 504 serve a similar purpose. As the Third Circuit has explained, both require "schools that receive federal financial assistance to provide a free appropriate public education to each qualified handicapped person. . . ." *Ridley* [*Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012)]. "To offer an 'appropriate education' under the Rehabilitation Act, a school district must reasonably accommodate the needs of the handicapped child so as to ensure the meaningful participation in educational activities and access to educational benefits." *Id.* at 280. If such opportunity is denied to a disabled student, that student may have a claim under Section 504.

*Karrissa G.*, 2017 WL 6311851, at *5. Plaintiff satisfied this first element by alleging S.S. "suffers with autism and is non-verbal" and had an IEP plan when he was a participant in the District's Special Education Program. (Doc. 1 ¶¶ 8, 9). Plaintiff has also satisfied the second and third elements because S.S. is a minor and former student in the District, "a governmental entity which provides free public education to students in the Lackawanna County area."[3] (*Id.* at ¶ 3). Lastly, Plaintiff has satisfied the fourth element by alleging both that S.S. was put into the New Story Throop because of his disability and that the New Story Throop and the District placed S.S. in the quiet room due to behavior problems relating to his disability and took no remedial action. (Doc. 1 ¶¶ 8, 9, 10, 13, 18-20). Accordingly, Plaintiff has stated a Section 504 claim.

For purposes of compensatory damages on Plaintiff's Section 504 claim, a showing of deliberate indifference satisfies the intentionality requirement. *See D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014). A showing of deliberate indifference satisfies the intentionality requirement. *Id.* To demonstrate deliberate indifference, Plaintiff must "present evidence that shows both: (1) *knowledge* that a federally protected right is likely to be violated . . ., and (2) *failure to act* despite that knowledge." *S.H. v. Lower Marion Sch. Dist.*, 729 F.3d 248, 265

---

[3]      Defendant does not challenge Plaintiff's allegation that Defendant "received federal funding for the special education program in which S.S. participated." (*Id.* ¶ 55).

(3d Cir. 2013) (citing *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).

"Deliberate indifference 'does not require a showing of personal ill will or animosity

toward the disabled person.'" *Id.* at 263 (quoting *Meagley v. City of Little Rock*, 639

F.3d 384, 389 (8th Cir. 2011) (internal quotation marks omitted)).  It does, however,

require a "'deliberate choice, rather than negligence or bureaucratic inaction.'" *Id.*

(quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)).

However, for the reasons discussed above, while Plaintiff has alleged that at least one

District employee was informed of the February 8 and 9, 2016 incidents and the

District failed to act until "some significant time after[ward]," these facts, without

more, are insufficient to show a deliberate choice was made by the District, and are

instead indicative of negligence or bureaucratic inaction.  As such, Plaintiff has not

stated a claim for compensatory damages under Section 504.

### D.    Amendment

"[E]ven 'if a complaint is subject to Rule 12(b)(6) dismissal, a district court must

permit a curative amendment unless such an amendment would be inequitable or

futile.'" *Payne v. Duncan*, No. 3:15-cv-1010, 2016 WL 394004, at *3 (M.D. Pa. Jan.

29, 2016) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)).

The Third Circuit has stated:

> [E]ven when plaintiff does not seek leave to amend his complaint
> after a defendant moves to dismiss it, unless the district court finds
> that amendment would be inequitable or futile, the court must inform
> the plaintiff that he or she has leave to amend the complaint within a
> set period of time.

*Phillips*, 515 F.3d at 245.  Because Plaintiff may be able to allege facts sufficient to

state claims under Title IX and the Fourteenth Amendment and request compensatory

damages under Section 504 of the Rehabilitation Act, I will grant leave to amend the

Complaint.

## IV. Conclusion

For the above stated reasons, Counts I and II of the Complaint and Plaintiff's request for compensatory damages under Section 504 of the Rehabilitation Act will be dismissed without prejudice and with leave to amend.

An appropriate order follows.


July 16, 2019                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge