# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY SMITH, individually and on behalf of a minor, S.S., | No. 3:18-CV-00478 |
| Plaintiff, | No. 3:19-CV-00064 |
| v. | |
| MID-VALLEY SCHOOL DISTRICT and SALISBURY BEHAVIORAL HEALTH, INC., d/b/a NEW STORY THROOP, | (JUDGE CAPUTO) |
| Defendants. | |

## **MEMORANDUM**

Presently before me is a Motion to Dismiss (Doc. 31) filed by Defendant Mid-Valley School District ("Defendant" or "the District"). The District contends that Plaintiff Tammy Smith ("Plaintiff" or "Smith"), individually and on behalf of a minor, S.S., has failed to state a claim upon which relief may be granted on three separate claims under the Fourteenth Amendment, the Individuals with Disability Education Act ("IDEA"), and Section 504 of the Rehabilitation Act ("Section 504"or "Rehabilitation Act"). Because the Plaintiff has failed to allege certain elements necessary to sustain claims under the Fourteenth Amendment and the IDEA, but has stated all necessary elements under Section 504, Defendant's Motion to Dismiss will be granted in part and denied in part.

## I. Background

The facts from Smith's Second Amended Complaint (Doc. 29), taken as true and viewed in the light most favorable to Smith are as follows:

Plaintiff Tammy Smith is the mother of S.S., a minor. (Doc. 29 at ¶ 2). S.S. is a non-verbal autistic student who was enrolled in the District's Special Education Program with an Individualized Education Plan ("IEP") for behavioral support. (*Id.* at ¶¶ 7-10). The District referred S.S. to Salisbury Behavioral Health, Inc. d/b/a New Story ("New Story"), a private

education entity working with the District, for attempted IEP support classes. (*Id.* at ¶¶ 4, 7, 10-11).

On February 16, 2016, the Throop Police Department received a report of "suspected child endangerment and neglect" at New Story. (*Id.* at ¶ 12). Three days later, after interviewing staff members, the police officer assigned to the matter determined this report involved S.S.'s placement in a "quiet room" for behavioral problems on February 9, 2016. (*Id.* at ¶¶ 13-14). According to New Story employees who observed the incident, S.S. took off all his clothes, urinated on the floor, "stoop[ed] to the ground on his hands and knees[,]" and "drank his own urine from the ground." (*Id.* at ¶¶ 15-16). These employees witnessed but did not attempt to stop S.S.'s behavior. (*Id.* at ¶ 16). The Throop Police Department also found that a similar incident occurred the day before, on February 8, 2016, during which New Story employees watched as S.S. took off his clothes, played in, and drank his own urine. (*Id.* at ¶¶ 17-18).

Although the District's Special Education Director was informed about both incidents each day they occurred, Smith was not informed of these incidents until the police who investigated the incidents contacted her. (*Id.* at ¶¶ 19, 31-33, 39). Upon being informed of these events, Smith immediately requested IEP meetings with the District and New Story. (*Id.* at ¶¶ 34, 41). During the first such meeting, Smith learned that "the quiet room was still being utilized" to manage students. (*Id*. at ¶ 35). The use of the "quiet room" only ceased after a subsequent meeting and engagement with legal counsel. (*Id*. at ¶ 36). Around the same time, S.S. was removed from New Story at Smith's direction. (*Id.* at ¶ 42). Following these events, S.S. "regressed in his mental progression and development" and was placed in a full-time institution that provides him with educational and living support. (*Id.* at ¶¶ 45-46).

Plaintiff filed a complaint in February of 2018 against the District and New Story (collectively "Defendants") alleging various violations of Federal Constitutional and statutory rights as well as a state law contract claim, with all claims being removed to this Court on February 27, 2018. (Doc. 1). Following the submission of a Motion to Dismiss by the

District (Doc. 5), on March 23, 2018, Plaintiff filed an Amended Complaint. (Doc. 10). Both Defendants submitted motions to dismiss the amended complaint. (Docs. 11, 12). I granted the District's Motion to Dismiss (Doc. 11) as to all Counts against the District on June 22, 2018 because Plaintiff failed to exhaust her administrative remedies before bringing her claims. (Docs. 23, 24).

On January 10, 2019, while New Story's Motion to Dismiss was still pending, Plaintiff filed a separate action against the District alleging the same violations that were previously dismissed, including Title IX, Fourteenth Amendment, IDEA, and Section 504 claims. (*Smith v. Mid-Valley School District*, 3:19-cv-00064, Doc. 1). In this Complaint, the Plaintiff alleged that they had since exhausted all their administrative remedies. (*Id*.). The District then filed a Motion to Dismiss the Amended Complaint for failing to state a claim. (*Smith v. Mid-Valley School District*, 3:19-cv-00064, Doc. 6). On April 2, 2019, while both Motions were still pending, I consolidated the two cases. (Doc. 25). I subsequently granted in part and denied in part New Story's Motion (*see* Doc. 26) and dismissed all the Plaintiff's claims against the District for: failure to allege disparate treatment based on sex for Plaintiff's Title IX claim; failure to allege deliberate indifference or existence of a policy for Plaintiff's Fourteenth Amendment claim; and failure to allege a "deliberate choice" by the District which would support compensatory damages for a Rehabilitation Act claim. (*See* Doc. 27). Plaintiff was then given further opportunity to amend the complaint. (*Id.*)

On July 31, 2019, the Plaintiff filed a Second Amended Complaint, dropping the Title IX claim, and asserting only the Fourteenth Amendment claim, the IDEA claim, and the Section 504 claim against the District. (Doc. 29).[1] The District then filed the instant Motion to Dismiss on August 13, 2019 contending that the Plaintiff fails to state a claim upon which relief can be granted because she fails to plead the type of intentional or deliberate conduct which rises to the level of a constitutional violation under the Fourteenth Amendment and

---

[1] New Story did not file an additional Motion to Dismiss and has since filed its Answer to Plaintiff's Second Amended Complaint. (*See* Doc. 35).

3

further fails to properly claim either deviation from an IEP under the IDEA or discrimination under Section 504. (*See* Doc. 32). Moreover, even if she did properly make these claims, the District contends that she would otherwise be preempted from bringing her Constitutional claims by the terms of the IDEA or would not be entitled to compensatory damages for any claim. (*See id*.). The District's Motion has been fully briefed and is ripe for review.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, my role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000)*. I do not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying elements of the claim, (2) reviewing the complaint to strike conclusory

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

In deciding a motion to dismiss, I should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v.* Belichick, 650 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). I may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar. Corp.,* 998 F.2d at 1196. I need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

### III. Discussion

Defendant argues that Plaintiff's claims under the Fourteenth Amendment, the IDEA, and Section 504 of the Rehabilitation Act should be dismissed for failure to state claims upon which relief may be granted. Defendant contends first that the Fourteenth Amendment claim

must be dismissed due to a failure to plead a policy, failure to claim deliberate indifference to a risk of harm to S.S., failure to plead a protected constitutional interest, and claim preemption under the IDEA. (*See generally* Doc. 32 at 4-12). Defendant then contends that the IDEA claim must be dismissed because of an inability to claim compensatory damages and failure to plead the particulars of the IEP and how the District deviated from it. (*Id*. at 14-16). Defendant finally contends that the Rehabilitation Act claim must be dismissed because the Plaintiff has not claimed discrimination based on a disability and has not properly plead compensatory damages under Section 504. (*Id*. at 12-14). I will address these arguments in order.

### A. Fourteenth Amendment Claim

In Count I of the Complaint, Plaintiff alleges the District's conduct, or lack thereof, in response to the incidents on February 8 and 9, 2016 violated S.S.'s rights under the Fourteenth Amendment due process and equal protection clauses. (Doc. 29 at ¶¶ 50-51). Specifically, Plaintiff alleges that it was the District's policy to send children with special needs to New Story, who, according to its own policy, would then submit these children to a "quiet room." (*Id*. at ¶¶ 20-27). According to the Plaintiff, the District knew of New Story's "quiet room" policy but nonetheless kept sending kids to New Story and otherwise did not attempt to stop New Story from its practice. (*Id*.). Moreover, it is alleged that use of this "quiet room" led to the deprivation of S.S.'s Constitutional rights. (*Id*. at ¶ 51).

Though not stated as such in the Complaint, this claim is brought under 42 U.S.C. § 1983, which provides a civil remedy against persons acting under color of state law who deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

658, 691 (1978).² "[M]unicipalities and other local government units are to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690-91.

Therefore, in *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. *Id.* More specifically, a § 1983 claim against a municipality requires a plaintiff to: (1) identify a policy, custom, or practice that deprived them of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy, custom, or practice and their injury. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Bell v. City of Philadelphia*, 629 F. App'x 214, 216 (3d Cir. 2015).

"A policy exists 'when a decisionmaker possess[ing] final authority to establish . . . [public] policy with respect to the action issues an official proclamation, policy, or edict.'" *K.E. v. Dover Area School District*, 2016 WL 2897614, at *5 (M.D. Pa. 2016) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)). "A custom is 'an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law.'" *Id*. (quoting *Natale*, 318 F.3d at 584). "A plaintiff may also establish a policy or custom [and a *Monell* claim] when a 'policymaker has failed to act

---

²     Plaintiff cannot otherwise bring this claims except for under 42 U.S.C. § 1983. *See Moeck v. Pleasant Valley School Dist.*, 983 F.Supp.2d 516, 523-524 (M.D. Pa. 2013) (holding that civil rights claims against school districts must be brought under § 1983).

7

affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Id*. (quoting *Natale*, 318 F.3d at 584). "A government entity exhibits deliberate indifference when it 'disregard[s] a known or obvious consequence of [its] action." *Id*. (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712 (3d Cir. 1993) (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 724-25 (3d Cir. 1989)) ("[A] plaintiff must do more than show the defendant could have averted her injury and failed to do so."); *Shadie v. Forte*, 2011 WL 607447, at *6 (M.D. Pa. 2011) (finding that knowledge of incidents of abuse by a special education director, alone, is not enough to impute his action to a School District under § 1983). "Stated another way . . . a plaintiff must demonstrate that 'policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the] injury." *M.S. ex. rel. Hall v. Susquehanna Township School Dist.*, 43 F.Supp.3d 412, 421 (M.D. Pa. 2014) ("Susquehanna") (quoting *Turner v. City of Phila.*, 22 F.Supp.2d 434, 437 (E.D. Pa. 1988)). In absence of any allegations that a specific decisionmaker propagated the at-issue policy or specifically directed students be subjected to the "quiet room," the Plaintiff here implicates the third scenario and asks me to find that she has properly alleged that the District knew of a serious risk of harm to S.S. at New Story and was deliberately indifferent to it. (*See, e.g.,* Doc. 29 at ¶ 27 ("The Mid-Valley School District engaged in a practice to essentially push off the minor to New Story which it knew would engage in a practice of isolation and punishment . . . .")).

Accordingly, the Plaintiff has still failed to allege a policy, practice, or custom which caused or was the moving force behind the deprivation of S.S.'s constitutional rights. The

8

Plaintiff bases her claim that the District knew that S.S. would be placed in the "quiet room" on two specific incidents, which happened on consecutive days, while offering no further proof that the District knew about the use of the "quiet room" or affirmatively contributed to its use prior to February 2016. *See Susquehanna*, 43 F.Supp.3d at 421-22 (holding that Plaintiff needed specific factual averments of violations prior to or contemporaneous with injury to survive dismissal). These singular instances of misconduct without more fail to establish that the District knew about or could have prevented the injuries to S.S. on February 9 or acted with deliberate indifference to the risks to S.S.. *See A.B. v. Vineland Board of Education,* 2019 WL 2354609, at *10 (quoting *Susquehanna*, F.Supp.3d at 424) ("Plaintiff alleges no facts to plausibly suggest that Defendants had contemporaneous knowledge of [ ] sexual misconduct or even a 'a pattern of similar incidents.'"). The Plaintiff alleges that "[t]he Mid-Valley School District was well aware prior to February 8th and 9th that the quiet room was used and would be used in the minor Plaintiff's educational plan," (Doc. 29 at ¶ 38), but fails to offer any factual support for this conclusion. *See McGuire v. Northwest Area School Dist.*, 2012 WL 1144652, at *3 (M.D. Pa. 2012) (quoting *Iqbal*, 556 U.S. at 679) (holding that, without more, an assertion that defendant failed to protect plaintiff was "'not entitled to assumption of truth.'"). Moreover, even if the District knew about the use of the "quiet room" before the alleged incidents, the Plaintiff has still failed to allege that the District was deliberately indifferent to the risks of its use as the use of the room, by itself, does not establish that it would deprive S.S. of his constitutional rights. *See Black by Black*, 985 F.2d at 712 (quoting *Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991) (holding that "'a negligent failure to recognize [a] high risk of harm'" does not amount to deliberate indifference.).

Additionally, "'Congress did not intend § 1983 to be available to remedy violations of the IDEA." *Vicky M. v. Northeastern Education Unit 19*, 2007 WL 2844428, at *2 (M.D.

Pa. 2007) (quoting *A.W. v. The Jersey City Public Schools*, 486 F.3d 791 (3d Cir. 2007)). Therefore, to the extent that Plaintiff alleges a valid § 1983 action, her claims would otherwise be preempted by the IDEA. For their Fourteenth Amendment claim, the Plaintiff alleges that the District's:

> "failing to provide S.S. with *a free appropriate public education* constitute[s] unlawful discrimination against him and other autistic children in violation of the equal protection clause of the 14th Amendment and in violation of the due process clause contrary to the 14th Amendment of the United States Constitution."

(Doc. 29 at ¶ 51(emphasis added)). The Plaintiff goes on to allege that "S.S.'s civil rights were violated as guaranteed by federal statutes." (*Id*. at ¶ 53; *see also* Doc. 33 at ¶ 17 ("S.S. is entitled to a free appropriate public education which does not include a violation of his right to bodily integrity.")).

The Plaintiff bases her §1983 claims on violation of the rights afforded by the IDEA and otherwise does not clearly assert a freestanding constitutional claim. "The Third Circuit Court of Appeals has held that Plaintiffs are precluded from a remedy based upon 'free appropriate education' pursuant to § 1983." *Vicky*, 2007 WL 2844428, at *2 (quoting *A.W.*, 486 F.3d at 802). "The Plaintiffs' redress pursuant to IDEA violations belongs to IDEA's comprehensive remedial scheme." *Id*.

Since the Plaintiff has been given numerous opportunities to amend her constitutional claim and has been unable to successfully do so, I find further leave to amend would be futile and will dismiss this claim with prejudice. *See McGuire*, 2012 WL 1144652, at *3; *Derr v. Northumberland County Children and Youth Services*, 2018 WL 3770047, at *4 (M.D. Pa. 2018) (internal citations and quotation omitted) ("In the instant case, even though the plaintiffs have not requested leave to amend their *Monell* claim, the court finds that if the plaintiffs were granted leave to amend their *Monell* claim, it would amount to nothing more than an impermissible fishing expedition.").

**B.     IDEA Claim**

In Count III of the Complaint, Plaintiff alleges that the District violated S.S.'s rights under the IDEA by failing to provide him with the required quality of education as mandated by the Act.  (Doc. 29 at ¶¶ 67-68).

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a] free appropriate public education is available to all children with disabilities . . . ."  20 U.S.C. § 1412(a)(1)(A); *Shore Regional High Sch. Bd.of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004). A free appropriate public education ("FAPE") "'consists of education instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from instruction.'"  *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 188-89 (1982)) *abrogated on other grounds by A.W., 486 F.3d 791*.  "The 'primary vehicle' for a free appropriate public education is the Individualized Education Plan."  *Shadie*, 2011 WL 607447, at *4.  "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goal for the child's education and specifying the services the child will receive."  *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir. 1988), *cert denied*, 488 U.S. 1030 (1989); *Melissa S. v. School Dist. of Pittsburgh*, 183 Fed. Appx. 184, 186-87 (3d Cir. 2006).

"To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere de minimis failure, such that the disabled child was denied meaningful educational benefit."  *Shadie*, 2011 WL 607447, at *4 (citing *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349) (5th Cir. 2000).   "Flexibility to implement the IEP is

11

maintained, yet the school district is accountable for 'confer[ring] some education benefit upon the handicapped child,' as required by the IDEA." *Id*. (quoting *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000)).

Additionally, while parents are entitled to reimbursement of the cost of any expenditures on private education for a child who would have had public education but for the lack of a proper IEP, they are not entitled to any other compensatory or punitive damages under the IDEA. *See D.B. ex. rel. H.B. v. Gloucester Tp. School Dist.*, 751 F. Supp. 764, 773 (D.N.J. 2010); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985). To the extent that parents seek money damages exclusively, claims shall be dismissed. *Id*. at 773-74 (citing *Lester H. v. Gilhool*, 916 F.2d 865, 873 (3d Cir. 1990)).

The District contends that the Plaintiff has failed to specify what aspects of S.S.'s IEP were inappropriate or unreasonable and, further, that the Plaintiff is not entitled to compensatory damages under the IDEA. (Doc. 32 at 14-16). As such, the District contends that Plaintiff has failed to state a claim under the IDEA. The District is correct that the while the Plaintiff claims that the District failed to properly implement or follow the IEP (Doc. 29 at ¶¶ 10, 34-37, 68), she fails to allege any specifics of S.S.'s IEP except to say that she learned more specifically about the use of the "quiet room" during IEP meetings and urged the District and New Story to stop its use, which they did. (*See* Doc 29 at ¶¶ 35-36). To succeed on an IDEA claim, a Plaintiff must more specifically plead the what, if any, IEP plan was developed with the District prior to and in response to the events and how that plan was inadequate. *See Butler v. Mountain View School District*, 2013 WL 4520839, at *5-6 (M.D. Pa. 2013) (holding that exposure to bullying or "collateral torts" did not did not implicate the IDEA and a corresponding failure to implement an IEP).

Moreover, the Plaintiff has alleged that S.S. was placed in an alternative schooling as a result of the foregoing incidents. If that schooling was necessary to ameliorate the

inadequacy of the proposed IEP by the District, the Plaintiff is entitled to recover those costs. As such, Count III of the Plaintiff's complaint will be dismissed without prejudice.

### C. Section 504 Claim

Plaintiff alleges in Count IV of her complaint that the District discriminated against S.S. because of his autism by failing to protect him in the same manner as it did other students in violation of the Rehabilitation Act. (Doc. 29 at ¶¶ 71-78)

Section 504 of the Rehabilitation Act bars all federally funded entities from discriminating on the basis of disability. *See* 20 U.S.C. § 794(a). To establish a claim pursuant to Section 504, a plaintiff must demonstrate that: (1) he is "disabled" as defined by the statute; (2) he is "otherwise qualified" to participate in school activities; (3) the school or board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school because of his disability. *S.H. v. Lower Marion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Ridgewood Bd. of Educ. v. N.E. ex rel M.E.*, 172 F.3d 238, 253 (3d Cir. 1999), *superceded by statute on other grounds, D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488 (3d Cir. 2012). Where, like here, a plaintiff seeks compensatory damages on a Section 504 claim, the plaintiff must also prove that the discrimination or denial of benefits at issue was intentional, or at least that the defendant acted with deliberate indifference to the underlying discrimination. *Shadie v. Hazelton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014); *see also Butler*, 2013 WL 4520839, at *8 ("However, to establish liability, a plaintiff need not prove that defendant['s] discrimination was intentional.") (internal citation and quotation omitted).

I have already decided that the Plaintiff has adequately alleged that S.S. is disabled, was otherwise qualified to participate in school activities, that the school receives federal funding, and that he was excluded from regular school activities because of his disability.

13

(*See* Doc. 27 (previous memorandum opinion); Doc. 29 at ¶¶ 3, 9-11, 14, 19, 30). Defendant's remaining contention is that the Plaintiff has failed to allege any facts which establish abuse or intentionality by the District in S.S.'s alleged exclusion from regular school activities. (Doc 32. at 12-14). The lack of intentionality by the District would specifically inhibit the Plaintiff from recovering any compensatory damages. (*Id*. at 14); *see also Shadie*, 580 F.App'x at 70. To this end, the Plaintiff, in contravention of this Court's previous opinion (*see* Doc. 27), has done nothing to alter its pleadings so as to properly allege intentionality. To plead intentionality, the Plaintiff again alleges simply, without factual support, that either because the District placed kids at New Story or because the District failed to stop known abuse that the District was deliberately indifferent to S.S.'s rights. (*See* Doc. 29 at ¶¶ 20, 27, 77). As discussed above, the Plaintiff has provided no specific factual averments that the District knew about the use of the "quiet room" before the injury or sent kids to New Story knowing they would be deprived of their rights while in the room. *See Shadie*, 580 Fed.Appx. at 70 (internal citation and quotation omitted) ("The intentional discrimination standard demands proof that, at a minimum, the school district exhibited deliberate indifference to the underlying act of discrimination."). Therefore, while the Rehabilitation Act claim may proceed, the Plaintiffs claim for compensatory damages under Section 504 is dismissed with prejudice as the Plaintiff has now twice failed to allege intentionality. The remaining damages, including repayment for educational finances, may not overlap with the damages for the IDEA claim. *See Breanne C. v. York County School Dist.*, 732 F.Supp.2d 474, 489 (M.D. Pa. 2010) (holding that compensatory education award for IDEA violation was coextensive with any damages under Rehabilitation Act).

## IV. Conclusion

Because Plaintiff has failed to allege a policy or practice which caused the discrimination and because the claim is otherwise preempted by the IDEA, Count I of the

Complaint will be dismissed with prejudice. Because Plaintiff did not show a deviation from an IEP, Count III of the Complaint will be dismissed without prejudice. Because compensatory damages are not available under IDEA and because Plaintiff failed to plead intentional conduct under Section 504, Plaintiff is not entitled to compensatory damages under Counts III or IV. The Rehabilitation Act claim may otherwise proceed.

An appropriate order follows.


November 19, 2019 /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                                    United States District Judge